**ORDERED.**



Dated: May 11, 2010

_____
**EILEEN W. HOLLOWELL**
U.S. Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ALBERTO GONZALEZ MARRUFO<br>and BETTY MARTINEZ MARRUFO,<br><br>Debtors. | Chapter 7<br><br>Case No. 4:09-bk-08677-EWH |
| THE HUNTINGTON NATIONAL BANK,<br><br>Plaintiff,<br>v.<br><br>ALBERTO GONZALEZ MARRUFO<br>and BETTY MARTINEZ MARRUFO,<br><br>Defendants. | Adv. No. 4:09-ap-00903-EWH<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

Joint debtors, husband and wife, incurred a contractual community obligation to a creditor when they leased a vehicle. After several months of making payments, the husband tendered a check to the creditor which released its lien on the vehicle before the creditor learned that the check was a fake. For the reasons explained below, the

creditor is entitled to a nondischargeable judgment against the husband but not against the community property of the debtors nor against the wife's sole and separate property.

## II. STATEMENT OF JURISDICTION

The court has jurisdiction under 28 U.S.C. § 1334(a) and § 157(b)(2)(I).

## III. PROCEDURAL HISTORY

Alberto Gonzalez Marrufo ("Mr. Marrufo") and his wife, Betty Martinez Marrufo ("Mrs. Marrufo") (collectively ""Debtors"), filed a pro se Chapter 7 petition on April 28, 2009. On August 6, 2009, an order was entered granting the Chapter 7 Trustee's request to delay the entry of the Debtors' discharge and to extend the time for the Trustee to file an 11 U.S.C. § 727 complaint objecting to the discharge until the Trustee notified the court that the Debtors had fully complied with all of the Trustee's requests or until the Trustee filed a report of no distribution. As of the date of this decision, the Trustee has not filed either notice, so the Debtors have not received a discharge.

On August 7, 2009, The Huntington National Bank ("Huntington") filed a nondischargeability complaint ("Complaint") seeking to deny the Debtors' discharge under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).[1] On September 22, 2009, the Debtors filed a Motion to Dismiss the Complaint ("MTD") alleging that Huntington lacked standing to sue the Debtors because it had not demonstrated that there was a note from

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

the Debtors to Huntington. Debtors also alleged, generally, that Huntington and its law firm were engaged in a "debt collection racket."

On October 2, 2009, Huntington filed a response to the MTD and a motion for summary judgment ("MSJ"). At a November 10, 2009, hearing, both the MTD and MSJ were denied. On that same date, a pretrial scheduling conference was held trial was set for January 25, 2010. During the pretrial scheduling conference, the Debtors were informed that they would have to comply with all of the rules of civil procedure in defending against the Complaint. On November 13, 2009, the court issued its standard pretrial scheduling order, setting specific deadlines for disclosures and the filing of witnesses and exhibits lists.[2]

Huntington served discovery on the Debtors, including thirty one requests for admissions. Debtors' responses were due on or before December 19, 2009. Instead of responding to the requests for admissions, the Debtors stamped "paid in full" on each page of the requests and returned them to Huntington. On December 1, 2009, Huntington filed a Motion to Compel proper responses. Debtors did not respond to the Motion to Compel. On December 11, 2009, an order was entered requiring the Debtors to respond to all outstanding discovery requests by December 19, 2009. The Debtors did not respond. On December 28, 2009, Huntington filed a Motion for Order that Matters be Deemed Admitted ("Admissions Motion").

---

[2] All discovery was to be completed thirty days before trial; disclosure of witnesses and exhibits was to be disclosed no later than fourteen days before trial; and joint pretrial statement was to be filed five days before trial.

3

The deadline for the parties to file their pretrial statements was January 20, 2010, and the deadline for the parties to file their list of witnesses and exhibits was January 11, 2010. Huntington timely filed its list of witnesses and exhibits, amended it on January 14, 2010, and then filed a unilateral pretrial statement on January 19, 2010, alleging that Huntington's counsel had been unable to work with the Debtors to file a joint pretrial statement. On January 15, 2010, the Debtors filed a Notice of Filing Initial Disclosure Statement and Counterclaim ("Counterclaim"). The Counterclaim alleged that Huntington and its counsel had falsely alleged that Debtors have a contract with Huntington and falsely alleged that Debtors owed Huntington money. Debtors sought damages in the amount of $139,926. The Counterclaim included requests for admission from Huntington and a request for production of documents.

A January 20, 2010, hearing was held on the Admissions Motion. At that hearing, Mr. Marrufo asserted that Huntington was not the "real party in interest," had no standing, and that Mr. Marrufo generally "object[ed] to everything up to this point." At the conclusion of the hearing, the court granted the Admissions Motion. An order to that effect was entered on January 21, 2010. Also, on January 21, 2010, Huntington filed a motion to strike the Counterclaim.

Trial was conducted on January 25, 2010. Because the Debtors had not timely disclosed any witnesses or exhibits, they were not permitted to put on evidence. Their Counterclaim and accompanying discovery requests were also dismissed as having been untimely filed. Mr. Marrufo was, however, permitted to make argument and cross-examine all of Huntington's witnesses. At the conclusion of the trial, the court requested briefing from Huntington on the liability of Mrs. Marrufo and the Marrufos' community

4

property for Mr. Marrufo's action. On February 4, 2010, Huntington filed its brief asserting that it was not seeking a nondischargeability judgement against Mrs. Marrufo's sole and separate property; instead, it was seeking a determination that it was entitled to a nondischargeability judgment against Mr. Marrufo's sole and separate property as well as Debtors' marital community. The matter is now ready for decision.

## IV. FACTS

In April 2007, Mr. Marrufo leased a 2007 Toyota Tundra pick up truck ("Toyota") from Desert Toyota in Tucson ("Desert Toyota"). The monthly lease payment was $681. Desert Toyota assigned the contract to Huntington which financed the acquisition and obtained a purchase money security interest in the Toyota. The Debtors made regular monthly lease payments to Huntington until January 2008 when Mr. Marrufo requested a payoff figure from Huntington. Huntington provided Mr. Marrufo with a payoff figure of $45,181.98.

On February 27, 2008, Mr. Marrufo sent Huntington a letter and enclosed a check dated January 30, 2008, made payableto HBN Auto Exchange in the amount of $45,181.98 (the "Check"). The Check was drawn on "TOCS, P.O. Box 1686, Birmingham, AL 35201." On or about February 14, 2008, Huntington and Mr. Marrufo executed a Bill of Sale, Release and Receipt ("Bill of Sale Exhibit") pursuant to which the Toyota was sold to Mr. Marrufo for $45,181.98. On February 14, 2008, before the Check had cleared, Huntington released its lien on the Toyota and acknowledged in writing that its loan had been paid in full. As part of the payoff transaction, Huntington

5

also refunded to Mr. Marrufo the sum of $681 for excess payments.  When Huntington submitted Debtors' Check for payment, it was returned to them as invalid (Exhibit 10).[3]

Following the release of the Toyota to Mr. Marrufo, he sold it to a third party and used some or all of the proceeds to purchase a Harley-Davidson motorcycle and a 1979 pick up truck.  Both of those vehicles were subsequently seized and forfeited to the Pima County and Tucson City police departments as part of a criminal investigation (Exhibit 2).  On the trial date, Huntington had not recovered the Toyota or the $45,181.98.

## V. ISSUES

1. Did Mr. Marrufo's tender of the check to Huntington deprive it of the Purchase Price and security interest in the Toyota and create a nondischargeable debt under §§ 523(a)(2), (4) and (6)?

2. If so, is Huntington's debt excepted from Mr. Marrufo's discharge and from those protections that § 524(a)(3) provides to after acquired community property?

## VI. DISCUSSION

A. The Check was Counterfeit

This case centers on the Check that was returned to Huntington as an "invalid instrument."  This is not, therefore, a "bad check" case where a debtor writes a check

---

[3] All exhibit references are to exhibits admitted into evidence at the trial.

6

but there are insufficient funds to pay it. In this case, the Check was a false document created to make it appear that the Debtor had a bank account and funds, which he did not, in fact, have. The Check, therefore, was counterfeit.[4]

At trial, Mr. Marrufo denied that he had signed the Check.[5] Mr. Marrufo further argued under Federal Rule of Evidence 1003 that a duplicate of the Check should not have been admitted into evidence because the Check was "a masterful forgery." (Transcript p. 67, ln 9).

In closing argument, Mr. Marrufo acknowledged that he had tendered a check to Huntington, but argued that the Check admitted into evidence was not the check he tendered because it had been altered by two stamps on the back (Transcript p. 77, lns 3-22). Those stamps consisted of a deposit stamp by Huntington and a stamp from Wachovia, which is where Huntington's business representative testified that Huntington maintains an account (Transcript p. 31, lns 14-19). Therefore, Mr. Marrufo's arguments that the Check was not the one that he tendered is not credible. Accordingly, the court finds that Mr. Marrufo did sign the Check, which was counterfeit, in order to obtain title to the Toyota free and clear of Huntington's lien.

---

[4] According to Black's Law Dictionary, counterfeit means to "unlawfully forge, copy or imitate an item, especially money or a negotiable instrument . . . or other officially issued items of value . . . with the intent to deceive or defraud by presenting the item as genuine." BLACK'S LAW DICTIONARY 376 (8th ed. 2004). Forgery is defined in Black's Law Dictionary as the act of fraudulently making a false document to be used as if its genuine. *Id.* at 677.

[5] Because the Admissions Motion was granted, Mr. Marrufo is deemed to have admitted that he signed the Check. However, the court is mindful of the fact that Mr. Marrufo was unrepresented by counsel throughout this adversary proceeding and, therefore, has relied on Mr. Marrufo's statements at trial in deciding if Mr. Marrufo signed the Check.

7

Having made that factual finding, the court now turns to Huntington's request to have its debt declared nondischargeable pursuant to § 523(a)(2), (a)(4) and (a)(6). Huntington must prove that its claim is nondischargeable by a preponderance of the evidence under all three sections of the statute. Grogan v. Garner, 498 U.S. 279, 291 (1991).

    1.    <u>Tender of the Check Constitutes Grounds for Denial of Discharge Under § 523(a)(2)(A)</u>

In order to prevail under a § 523(a)(2)(A) claim for false representation, Huntington must demonstrate that: (1) Mr. Marrufo "obtained money through a material misrepresentation" that he knew was false, (2) that he intended to deceive Huntington, (3) that Huntington justifiably relied on the false representation; and (4) that Huntington's reliance was the proximate cause of its loss. All four elements have been met here. The evidence demonstrates that Mr. Marrufo knowingly tendered the fake Check with the intent of receiving title to the Toyota free and clear of Huntington's lien. Huntington justifiably relied on the Check, which appeared to be a normal check with normal routing numbers and other indicia of an ordinary check (Transcript p. 53, lns 6-12).[6] As a result of Huntington's reliance, it lost its security interest in the Toyota. In the alternative, tender of the Check to deprive Huntington of $45,181.98 constituted actual fraud, which is broader than misrepresentation. In re Corder, 299 B.R. 462, 465 (Bankr.

---

[6] In Field v. Mans, the Supreme Court ruled that a creditor needed only to prove that it justifiably relied on a representation, not that the creditor's reliance on that representation was objectively reasonable. 116 U.S. 59, 70-73 (1995). Under Justice Souter's explanation of justifiable reliance for example, a buyer may be justified when he or she relies on a seller's statement that land is free of encumbrances "even if he could have 'walk[ed] across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage." *Id. quoting* RESTATEMENT (SECOND) OF TORTS § 540, cmt. b, illus. 1 (1976).

8

S.D. Ohio 2003) *citing* Mellon Bank, N.A. v. Vitanovich (In re Vitanovich), 259 B.R. 873, 877 (6th Cir. B.A.P. 2001); Citibank v. Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996). Indeed, as noted earlier the definitions of counterfeit and forgery encompass an intent to defraud. State v. Thompson, 981 P.2d 595, 597 (Ariz. Ct. App. 1999). Similarly, forgery is defined as the act of fraudulently making a false document. *Id.* at 596. Huntington has, therefore, satisfied the requirements of § 523(a)(2)(A).

2. Section 523(a)(4)

Huntington argues that presentation of the Check constituted larceny under applicable Arizona law. However, a bankruptcy court in applying § 523(a)(4) is "not bound by the state law definition of larceny but, rather may follow federal common law, which defines larceny as a felonious taking of another's personal property with intent to convert it or deprive the owner of the same." Ormsby v. First Am. Title Co., 591 F.3d 1199, 1205 (9th Cir. 2010). The Ormsby court defined the term felonious as "proceeding from an evil heart or purpose; malicious, villainous . . . wrongful; done without excuse of color or right." Mr. Marrufo's tender of the false Check falls within the federal common law definition of larceny and, accordingly, Huntington is entitled to relief pursuant to § 523(a)(4).

3. Section 523(a)(6)

In order to prevail under § 523(a)(6), Huntington must prove both willful and malicious injury. *See* Carrillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002). Willful injury requires either subjective motive to inflict injury or belief that injury is substantially certain to result from the conduct. *Id.* at 1142. The conversion of a property subject to a creditor's security interest has been found to constitute a willful

9

injury under § 523(a)(6).  See In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992).
Huntington has, therefore, demonstrated that Mr. Marrufo's scheme to deprive
Huntington its security interest was willful.

Malicious injury: (1) requires a wrongful act; (2) done intentionally; (3) which
necessarily causes injury; and (4) is done without just cause or excuse.  Petralia v.
Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001).  Here, Mr. Marrufo tendered the Check
intentionally knowing that it would necessarily cause injury (the loss of Huntington's
money and its security interest in the Toyota), and was done without just cause or
excuse.  Accordingly, Huntington is entitled to a determination that the debt is
nondischargeable pursuant to § 523(a)(6).

4.  The Scope of the Nondischargeability Determination

At the conclusion of the trial, the court requested additional briefing from
Huntington about the scope of any nondischargeability judgment which might be
entered based upon the fact that the evidence demonstrated that all of the
representations and actions taken with respect to the tender of the Check were those of
Mr. Marrufo and were taken after the purchase of the Toyota.  Huntington responded by
filing a brief acknowledging that it was not seeking a nondischargeable judgment
against Mrs. Marrufo's sole and separate property, but that it was seeking a
nondischargeability judgment against Mr. Marrufo and the community property of Betty
and Alberto Marrufo.  Huntington relied primarily upon the case of In re Rollinson,
322 B.R. 879, 880 (Bankr. D. Ariz. 2005) to support its claim that once a community
debt is determined to be nondischargeable as to one spouse, it is also
nondischargeable as to their community property.  Huntington argues that because the

10

original obligation to acquire the Toyota was a community debt and because the amount that Huntington seeks to have declared nondischargeable is the balance due on that community debt, that Huntington's claim is a community claim excepted from discharge and not subject to the injunction of § 524(a)(3).

As has been established above, the debt is nondischargeable under a number of § 523 provisions. The question for this court, then, is whether the debt was a community debt. If it was, then under the rationale of Rollinson the debt should be nondischargeable as to the entire community; if not, then it is only nondischargeable as to Mr. Marrufo.

Under Arizona community property law, the court should presume that a debt entered into contractually is a community debt. *E.g.,* Morgan v. Bruce, 259 P.2d 558, 560-61 (Ariz. 1953). As Mr. and Mrs. Marrufo have not submitted any evidence to rebut the presumption, this court will presume that the contractual debt to pay for the Toyota was a community debt. That contracted for debt, however, is not the debt which the court has found to be nondischargeable. The nondischargeable debt is that debt created by Mr. Marrufo's tender of the counterfeit Check.

In contrast to contracted-for debts, , there is no presumption that a debt incurred through one spouse's tort is a debt chargeable to the community under Arizona community property law. *E.g.*, Garret v. Shannon, 476 P.2d 538, 539-40 (Ariz. Ct. App. 1970). In order for this court to hold the community liable for Mr. Marrufo's tortious acts, Huntington must establish that Mr. Marrufo's overall purpose in committing the tort was to benefit the community, Hays v. Richardson, 386 P.2d 791, 792-93 (Ariz. 1963).

11

Huntington failed to do this. Indeed, the testimony of one of Huntington's witnesses[7] indicates that Mrs. Marrufo did not understand why Mr. Marrufo sold the Toyota and that the overall community was not benefitted by Mr. Marrufo's tender of the Check. In any event, Huntington did not offer any evidence that Mrs. Marrufo participated in the scheme or any other evidence that the community benefitted from Mr. Marrufo's tort. As such, the debt was not a community debt, and Rollinson's holding is inapplicable. Accordingly, Huntington is entitled solely to a nondischargeable judgment against Mr. Marrufo.

## VII. CONCLUSION

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 7052. A judgment in the amount of $45,181.98 with interest to accrue at the federal judgment rate will be effective this date.[8]

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Alberto Gonzalez Marrufo
Betty Martinez Marrufo
c/o 6502 East Calle Altair
Tucson, AZ  85710

---

[7] Detective Baldwin of the Tucson Police Department. *See* Transcript at pages 11-12.

[8] The amount of the judgment was calculated as follows: $45,181.98, which is the presumptive value of the truck, plus interest at the federal judgment rate as specified by 28 U.S.C. § 1961 of 0.43%. Because the nondischargeable debt is based on Mr. Marrufo's tortious conduct, Huntington is not entitled to its contractual interest rate nor attorneys' fees.

12

| | |
|---|---|
| 1 | Albert Gonzalez Marrufo |
| 2 | Betty Martinez Marrufo |
| | General Delivery |
| 3 | Tucson, AZ 85726 |
| 4 | Gerard R. O'Meara |
| 5 | Matthew A. Goldstein |
| | Gust Rosenfeld PLC |
| 6 | 1 South Church Ave. #1900 |
| | Tucson, AZ 85701 |
| 7 | Attorneys for The Huntington National Bank |
| 8 | Beth Lang |
| 9 | Chapter 7 Trustee |
| | 1955 West Grant Rd. #125 |
| 10 | Tucson, AZ 85745 |
| 11 | U.S. Trustee's Office |
| 12 | 230 North First Ave. #204 |
| | Phoenix, AZ 85003 |

13